Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 There, is no difficulty, on principle and authority, in determining the rights of the parties to this controversy. On the conceded facts of this case there can be no question that the legal title to the 1250 sacks of corn passed to Hamilton & Dunnica before the levy of the attachment by Halliday Brothers, and if so, the judgment of the Circuit Court must be affirmed.
 

 It is not necessary to discuss the general doetriue relat
 
 *564
 
 ing to the lien of a factor, because it has no application here. If this were the case of a mere agreement to ship produce in satisfaction of antecedent advances, which will not in general give the factor or consignee a lien upon it for his general balance until he obtains actual possession of it, the attachment would hold the property. But the agreement in question is of a different character, and rests on a different legal principle. It appropriates specifically 1250 bags of corn to Hamilton & Dunnica, with an intention that they shall sell it to pay the draft drawn against it, and, if there is any surplus remaining after this is done, to apply it in liquidation of the advances previously made for Sherwood, Earns & Co. And this appropriation did not rest in intention merely, for it was executed, so far as the parties in St. Louis could execute it, by the transmission of the bill of lading to Hamilton & Dunnica.. As soon as the corn was deposited with the common carrier, who was the bailee for the purpose, the title to it and right of property in it was changed and vested in Hamilton & Dunnica, to whom it was to be delivered. This is the effect of all the cases on the subject.
 
 *
 
 A contrary rule would defeat the object which the parties to the agreement intended to accomplish by it, and would seriously embarrass commercial men in their dealings with each other, for it can be readily seen that the mode of transfer adopted in this case is necessary for the purposes of commerce. If Hamilton & Dunnica had purchased the corn outright, they could not have got a better legal title to it than they acquired under the admitted facts of this suit. The legal title to the property passed to them to carry out certain designated purposes, and they had the right to the undisturbed possession of it until those purposes were effected.
 

 
 *565
 
 It may be said that Sherwood, Earns & Co. had an equitable interest in any surplus that might remain of the proceeds of the corn after the claims of Hamilton & Dunnica were satisfied, and that this equitable interest was liable to attachment by the laws of Illinois. “ But that liability,” says Chief Justice Taney, in
 
 Gibson
 
 v.
 
 Stevens,
 

 *
 

 “
 
 will not authorize the attaching creditor to take the property out of the hands of the legal owner before his claims upon it are discharged.” Besides, it is clear from the evidence that the proceeds from the corn fell far short of liquidating the indebtedness dué Hamiltou
 
 &
 
 Dunnica from Sherwood, Earns & Co.
 

 It is argued that the bill of lading did not effect the transfer of the property, because when it was executed the com had not been received by the transportation company. But it became operative as soon as the corn was in the custody of the boat, and the legal relations of Hamilton & Dunnica to the property were fixed from that time, and it is unnecessary to consider what would have been the rights of third persons if the attachment proceedings had preceded, instead of being subsequent to, the delivery of the corn.
 

 It is urged that the Circuit Court should have instructed the jury, as it was asked to do, that Ilalliday Brothers were not liable in this action, unless' they directed .the officer to seize the corn, or personally interfered with or took control of it. But the refusal to give this instruction worked no harm to the plaintiffs in error, for the court could have well told the jury that the evidence was conclusive on these points against them. Indeed, so conclusive is it that there is no room to doubt that they took out the attachment to seize this very corn, and directed the officer to delay the boat for that purpose. On the 4th of September, Booth, their agent in St. Louis, having ascertained that Sherwood, Earns & Co. had failed, and did not own any property there to attach, and being unable to get the money for the corn, sent a telegram to the Hallidays to stop) its delivery. This they doubt
 
 *566
 
 less found they could not do; but on the same day they applied for the writ of attachment, which was issued and served on the following day. No other persons in Cairo could have known of the shipment of the corn, or Sherwood, Karn£ & Company’s connection with it, and it is idle to suppose the marshal would have made the levy without the special instructions of the plaintiffs in the suit. Besides, it was their interest to keep their proceedings as secret as possible, for fear the officers of the boat might get knowledge of them and avoid landing at Cairo. But this is not all, for they told Booth that they attached the corn, and the marshal paid them the net proceeds of the sale of it. Surely nothing more is necessary to show that the levy and sale were at their instance, and there is no evidence at all to the contrary.
 

 These views dispose of the case, and the judgment is accordingly
 

 Affirmed.
 

 *
 

 Haille v. Smith, 1 Bosanquet & Puller, 563; Desha et al.
 
 v.
 
 Pope, 6 Alabama, 690; Gibson v. Stevens, 8 Howard, 384; Grove v. Gilmor, Ib. 429; Bryans v. Nix, 4 Meeson & Welsby, 775; Anderson v. Clark, 2 Bingham, 20; Holbrook v. Wight, 24 Wendell, 169; Grosvenor v. Phillips, 2 Hill, 147; Sumner v. Hamlet, 12 Pickering, 76; Nesmith et al. v. The Dyeing and Bleaching Company, 1 Curtis, 130; Valle v. Cerre, 36 Missouri, 575.
 

 *
 

 8 Howard, 384.